IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-01030-RM-SKC

CURT GRAMBERG,

    Plaintiff,

v.

AMERICAN ALTERNATIVE INSURANCE CORPORATION, and
AMERIPRISE AUTO & HOME INSURANCE a/k/a Ameriprise Insurance Company a/k/a IDS Property Casualty Insurance Company a/k/a American Family Connect Insurance Agency, Inc.,

    Defendants.

---

**ORDER**

---

This insurance lawsuit is before the Court on three motions to preclude or strike testimony filed by Defendant Ameriprise Auto & Home Insurance ("Ameriprise") and a fourth motion for leave to file a motion for summary judgment by Defendant American Alternative Insurance Corporation ("AAIC"). (ECF Nos. 36, 37, 38, 67.) The motions have been fully briefed. (ECF Nos. 39, 40, 41, 42, 43, 44, 69, 70.) They are each denied for the reasons below.

**I.    BACKGROUND**

This case arises out of Plaintiff's claim for underinsured motorist benefits from Defendants for injuries he sustained in a motor vehicle collision while working for his former employer as a line locator. *See* Colo. Rev. Stat. § 10-4-609. The sole issue for the jury will be determining the nature and extent of Plaintiff's damages.

## II.     LEGAL STANDARDS

### A.     Expert Testimony

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  The Court has the duty to act as a gatekeeper by ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand.  *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

If the Court determines that an expert is sufficiently qualified to render an opinion, it must then determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.  *See Nacchio*, 555 F.3d at 1241.  In doing so, the Court considers (1) whether the testimony is based on sufficient facts or data, (2) whether it is the product of reliable principles and methods, and (3) whether the expert has reliably applied the principles and methods to the facts of the case.  *See* Fed. R. Evid. 702(b)-(d).

If the evidence is sufficiently reliable, the Court then evaluates whether the proposed evidence or testimony is sufficiently relevant that it will assist the jury in understanding the evidence or determining a fact at issue.  *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878,

884 (10th Cir. 2005). The Court has discretion in how it performs its gatekeeper function. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

### B. Leave to Amend Scheduling Order

Where, as here, a scheduling order deadline has passed, a movant must establish good cause under Fed. R. Civ. P. 16(b)(4) to amend the scheduling order. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* (quotation omitted). The Court has considerable discretion in determining what kind of showing satisfies the good cause standard and may focus on, inter alia, the diligence of the moving party, its reasons for seeking to amend, and any possible prejudice to the opposing party. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989 (10th Cir. 2019).

## III. ANALYSIS

### A. Motion to Exclude Testimony of Non-Retained Experts

Ameriprise seeks to exclude or limit the testimony of seven of the twelve treating physicians Plaintiff disclosed as expert witnesses, arguing that these non-retained experts should be precluded from presenting any testimony "regarding issues of medical causation and any other issues beyond the scope of their provision of treatment to [Plaintiff]." (ECF No. 36 at 2.) Ameriprise first argues these treating physicians should be precluded from offering such testimony because Plaintiff failed to provide reports required under Fed. R. Civ. P. 26(a)(2)(B). But such reports are not required from treating physicians whose testimony is limited to the areas of diagnosis and prognosis. *See Wash. v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 442 (D. Colo. 2000). "Ordinarily, physicians providing a party with medical treatment are designated as non-retained and, thus, are exempt from the report requirement." *Dedmon, v.*

*Continental Airlines, Inc.*, 2015 WL 1040521, at *5 (D. Colo. 2015).  Ameriprise points to nothing suggesting these witnesses will testify outside the immediate scope of their treatment of Plaintiff.  Accordingly, the Court declines to exclude these witnesses' testimony for failure to comply with Fed. R. Civ. P. 26(a)(2)(B).

Ameriprise next argues that the disclosures of these treating physicians are deficient because they do not comply with Fed. R. Civ. P. 26(a)(2)(C), which requires the disclosures to state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify."  The Court has reviewed Plaintiff's fifty-two-page document containing its expert disclosures and is satisfied that the disclosures provide sufficient information regarding the likely testimony of each witness and that Defendants will not be unfairly surprised at trial.  The Court finds that objections to these witnesses' testimony are better addressed at trial.

Finally, Ameriprise argues that Plaintiff should be excluded from testifying as a sanction under Fed. R. Civ. P. 37(c).  The Court disagrees.  The Court sees this as a straightforward, "battle of the experts" case on Plaintiff's damages and discerns no basis for the sanction of exclusion at this stage of the proceedings.  Even if there were a disclosure violation, "[t]he decision to exclude evidence is a drastic sanction."  *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997).  If these witnesses testify "beyond their observations and personal knowledge of treating [Plaintiff]," as Ameriprise fears, any objections can be addressed at trial.

    **B.**    **Motion to Exclude Testimony of Dr. Poppie**

Ameriprise also seeks to limit or exclude the testimony of one of Plaintiff's retained experts, Dr. Bradley A. Poppie, a licensed physical therapist.  Ameriprise concedes that Dr. Poppie is qualified to conduct functional capacity evaluations but argues he is not qualified to

4

opine as to injury causation with respect to Plaintiff's potential brain injuries. (*See* ECF No. 37 at 7.) But Ameriprise has not challenged the opinions of Plaintiff's neuropsychological evaluators contained in his medical records or shown that Dr. Poppie should not have considered cognitive issues or incorporated such diagnoses in completing Plaintiff's evaluation. "Generally, questions concerning an expert's experience and the factual basis and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility." *Parker v. Wal-Mart Stores, Inc.*, 267 F.R.D. 373, 377 (D. Kan. 2010) (citing *United States v. Varoz*, 740 F.2d 772, 775 (10th Cir. 1984)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *O'Sullivan v. GEICO Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quotation omitted).

Ameriprise also argues Dr. Poppie did not use a reliable methodology when opining as to the connection between his evaluation of Plaintiff and the motor vehicle collision. But unlike the treating physician in *Miller v. United States*, 422 F. Supp. 2d 441, 444 (D. Del. 2006), Dr. Poppie *did* conduct a review of Plaintiff's prior medical records and *did not* rely solely on Plaintiff's statements to make his report. The report is based on an extensive functional capacity evaluation consisting of observations, an orthopedic examination, and a continuum of functional tests, and it concludes that Plaintiff "will be unable to return to or perform work related tasks similar to his previous position." (ECF No. 37-8 at 16.) "[T]he opinions of treating physicians on injury causation—based on medical knowledge, physical examination, and patient histories—are routinely admitted in federal courts." *Etherton v. Owners Ins. Co.*, 35 F. Supp. 3d 1360, 1372 (D. Colo. 2014), *aff'd*, 829 F.3d 1209 (10th Cir. 2016). Ameriprise's reliance on the *Etherton* cases is misplaced here because it has not shown that Dr. Poppie is expected to testify that

Plaintiff's injuries were *entirely* caused by the subject collision. Indeed, in this case, there appears to be no dispute that Plaintiff sustained some injury from the collision as he received workers' compensation benefits for it. To the extent Defendants wish to challenge the notion that the collision is the reason for poor performance on the functional capacity evaluation, they may present evidence attributing Plaintiff's condition to other causes, but the Court discerns no basis for excluding Dr. Poppie's testimony altogether. "Ultimately, the rejection of expert testimony is the exception rather than the rule." *O'Sullivan*, 233 F. Supp. 3d at 922 (quotation omitted).

        **C.**      **Second Motion to Exclude Testimony of Non-Retained Experts**

Ameriprise's motion to exclude based on Fed. R. Evid. 702 is directed at the same seven witnesses as its other motion. The motion identifies "causation statements" by each witness which are, for the most part, excerpted from Plaintiff's expert disclosures. For example, Ameriprise objects to Dr. Siegel testifying that she provided treatment for Plaintiff "for the injuries he sustained in the incident that occurred on May 19, 2017" and to similar statements by the other treatment providers. (ECF No. 38 at 8-14.) But, as mentioned above, treating providers routinely testify about injury causation. *See Etherton*, 35 F. Supp. 3d at 1372. The Court finds these types of statements pertain to the treatment Plaintiff received following the collision, and Ameriprise has not shown that any of these witnesses are expected to testify that Plaintiff's injuries were *entirely* caused by the subject collision. Evidence that Plaintiff may have had preexisting conditions at the time of the collision or may have sustained additional injuries thereafter could certainly be relevant in this case, but such evidence does not provide a basis for excluding the opinions of these treatment providers.

### D. Motion for Leave

AAIC seeks leave to amend the scheduling order so that it can file a motion for summary judgment. Although the dispositive motion deadline was February 24, 2021, AAIC contends the law has changed due to the decision in *Ward v. Acuity*, No. 21-cv-00765-CMA-NYW, 2022 WL 824436 (D. Colo. Mar. 18, 2022). Addressing an issue of first impression under Colorado law, United States District Judge Christine M. Arguello concluded in *Ward* that the plaintiff was barred from receiving uninsured motorist coverage after he received workers' compensation. AAIC argues that the *Ward* case is substantially similar to this one and that, because Plaintiff has already received workers' compensation benefits, he is not entitled to underinsured motorist benefits as a matter of law. Nonetheless, the Court will deny leave to amend the scheduling order.

First, the *Ward* decision is not binding on this Court, so AAIC's contention that it amounts to an intervening change in law is overstated. Further, the decision is currently on appeal. It remains to be seen whether the United States Court of Appeals for the Tenth Circuit agrees with Judge Arguello's prediction on how Colorado's highest court would address the interplay between the Workers' Compensation Act and Colorado's uninsured/underinsured motorist statute if it were presented with the issue. Even if the *Ward* decision gets affirmed, however, it would be premature for the Court to use it as the basis for granting summary judgment in AAIC's favor now.

Second, nothing precluded AAIC from seeking summary judgment on this issue—as the defendant in *Ward* did and, presumably, based on the same authority—before the applicable deadline. Accordingly, the Court finds AAIC has not established it has been sufficiently diligent on this issue.

Third, trial has already been postponed significantly for an unrelated reason. The Court is disinclined to permit further delays in the absence of good cause.

## IV. CONCLUSION

Therefore, the motions addressed in this Order (ECF Nos. 36, 37, 38, 67) are DENIED.

DATED this 14th day of September, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge